In re Sonya M. PORRETTO, Debtor.

Sonya M. Porretto, Plaintiff,

Randy W. Williams, Trustee,
Plaintiff–Substitute

v.

Darryl A. Nelson, Defendant.

Bankruptcy No. 09–35324.
Adversary No. 11–03226.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Oct. 9, 2012.

Emily Wade Miller, Thompson & Knight LLP, Matthew R. Reed, Schwartz, Page & Harding, Houston, TX, for Plaintiff.

David W. Anderson, Rogers & Anderson, PLLC, Houston, TX, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE TRUSTEE'S TRADITIONAL MOTION FOR PARTIAL SUMMARY JUDGMENT

[Adv. Docket Nos. 25, 38, 43, & 45]

JEFF BOHM, Chief Judge.

### I. INTRODUCTION

Debtor Sonya M. Porretto (Porretto) and Defendant Darryl A. Nelson (Nelson) entered into an Agreed Divorce Decree whereby Nelson was obligated to pay certain creditors and to indemnify Porretto and hold her harmless for any damages arising from his failure to pay. Nelson did, in fact, fail to pay and, when Porretto filed her Chapter 7 case, those creditors were allowed claims against the bankruptcy estate. The Chapter 7 Trustee in Porretto's case, Randy Williams (the Trustee), brought the instant action on Porretto's behalf under § 542(b) of the Bankruptcy Code.[1] The Trustee seeks an order requiring Nelson to turnover funds sufficient to satisfy these debts owed to the bankruptcy estate.

---

1. Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., § ) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

The Court now makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

1. On February 10, 2008, an Agreed Final Decree of Divorce (the Agreed Divorce Decree) was entered between Porretto and Nelson in their divorce proceeding styled "In the Matter of the Marriage of Sonya P. Nelson and Darryl Arthur Nelson and in the Interest of Alexander Nelson and Nicolette Marie Nelson, Children, No. 2007–22219, 245th Judicial District, Harris County, Texas." [Adv. Doc. No. 38, Ex. No. 3].

2. Pursuant to the Agreed Divorce Decree, Nelson was ordered to pay certain debts as part of the division of the marital estate. [*Id.*]. The exact language of the relevant portion of the Agreed Divorce Decree reads as follows:

> IT IS ORDERED AND DECREED that the husband, DARRYL ARTHUR NELSON, *shall pay*, as part of the division of the estate of the parties, *and shall indemnify* and hold the wife harmless from any failure to so discharge, these items:
>
> H–2. The following debts, charges, liabilities, and obligations:
>
> n. Debt owed to John Anderson IRA, plus interest [(the Anderson Debt)]

o. Debt owed to Don Christiansen, DO, PA, DBPP, plus interest [(the Christiansen Debt)]

p. Debt owed to Michael W. Ford, DDS, PA, DDP, plus interest [(the Ford Debt)]

(collectively the Debts). [*Id.* at pg. 29] (emphasis added).

3. Nelson signed the Agreed Divorce Decree and specifically indicated his approval as to both form and substance. *See* [*Id.* at pg. 42]. Nelson was represented by counsel in connection with the Agreed Divorce Decree. *See* [*Id.* at pg. 41].

4. On July 27, 2009, Porretto filed for Chapter 11 bankruptcy. [Doc. No. 1]. Her case converted to Chapter 7 on December 19, 2011. [Doc. No. 243]. Randy Williams (the Trustee) was appointed Chapter 7 Trustee.

5. Nelson did not pay the Anderson Debt when it became due. Anderson brought suit against both Nelson and Porretto in state court (the Anderson Lawsuit). The suit was then removed to this Court, instituting Adversary Proceeding No. 09–03417.

6. On August 5, 2010, a default judgment was entered in favor of Anderson against Nelson.

7. Debtor retained counsel and defended the Anderson Lawsuit. On August 5, 2010, this Court approved a compromise and settlement between the Debtor and Anderson. [Adv. Doc. No. 30]. Pursuant to the settlement, Anderson was allowed a secured claim in the Debtor's bankruptcy in the amount of $304,780.21, "secured by a lien on the proceeds and/or property received by Debtor from the sale or other disposition of the Galveston Property...." [*Id.*]. Anderson was

also allowed an unsecured claim in the amount of $152,390.10. [*Id.*].

8. Nelson did not pay the Christiansen Debt or the Ford Debt. Christiansen and Ford sued both Nelson and the Debtor in state court (the Christiansen and Ford Lawsuit). The Christiansen and Ford Lawsuit was removed to this Court, initiating Adversary No. 09–03418.

9. On December 2, 2010, a default judgment was entered in favor of Christiansen and Ford against Nelson.

10. Debtor retained counsel and defended the Christiansen and Ford Lawsuit. On December 29, 2010, this Court approved a compromise and settlement between the Debtor and Christiansen and Ford. [Adv. Doc. No. 38]. Pursuant to the settlement, Christiansen was allowed a secured claim in the Debtor's bankruptcy in the amount of $250,000.00, "secured by a lien on the proceeds and/or property received by Debtor from the sale or other disposition of the Galveston Property...." [*Id.*]. Christiansen was also allowed an unsecured claim in the amount of $124,109.50. [*Id.*]. Ford was allowed a secured claim in the Debtor's bankruptcy in the amount of $150,000.00, "secured by a lien on the proceeds and/or property received by Debtor from the sale or other disposition of the Galveston Property...." [*Id.*]. Ford was also allowed an unsecured claim in the amount of $74,466.00. [*Id.*].

11. The Debtor instituted the instant adversary proceeding against Nelson on May 19, 2011. [Adv. Doc. No. 1]. In this adversary proceeding, the Debtor seeks a judgment ordering Nelson to turn over funds to pay in full the allowed claims of Anderson, Christiansen, and Ford, as well as the funds necessary to pay the debtor's reasonable attorneys' fees incurred in defending the state court judgments and this adversary proceeding. [*Id.*].

12. The Trustee was substituted as plaintiff on March 8, 2012. [Adv. Doc. No. 23].

13. On March 29, 2012, Nelson filed an amended answer to the complaint. [Adv. Doc. No. 30]. Nelson asserted that his obligation to Porretto under the Agreed Divorce Decree is one of indemnification and that "[t]he estate has not made any distributions for which the Trustee may seek indemnification." [*Id.* at ¶ 11].

14. The Trustee filed a motion for partial summary judgment (the Motion) on August 24, 2012. [Adv. Doc. No. 38]. Nelson filed a response opposing the Motion on September 19, 2012. [Adv. Doc. No. 43].

15. The Trustee filed a Memorandum in Support of the Motion on October 4, 2012. [Doc. No. 45]. On the same day, this Court heard oral argument on the Motion from counsel for the Trustee and counsel for Nelson.

### III. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

■ The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). 28 U.S.C. § 157(b)(2)(E) ("Core proceedings include ... orders to turn over property of the estate.") This contested matter is a core proceeding because it is a substantive right created under federal bankruptcy law. *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir.1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

Venue is proper pursuant to 28 U.S.C. § 1409(a).

## B. Constitutional Authority to Enter a Final Order

 The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter final orders. *Stern v. Marshall,* — U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Therefore, this Court has a duty to question its constitutional authority to enter a final order for any matter brought before it. The Court concludes that the facts in the pending suit are distinguishable from those in *Stern,* and that this Court has the authority to enter a final judgment. In *Stern,* the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. *Id.* Here, the Trustee seeks turnover under § 542 of the Bankruptcy Code. As this cause of action, and the requested relief, is based on an express provision of the Code, rather than state law, this suit is easily distinguishable from the suit in *Stern.* This Court is, thereby, constitutionally authorized to enter a final judgment in this suit.

## C. Nelson is Required By § 542 of the Code to Turnover to the Trustee an Amount Sufficient to Satisfy the Debts

Section 542(b) of the Code requires that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b). Thus, the test for whether turnover is appropriate is two-fold. First, the debt must be property of the estate. Second, it must be matured and payable on demand or on order.

### 1. Nelson's obligations pursuant to the Agreed Divorce Decree are debts that are property of the estate.

 The scope of the bankruptcy estate is broad, encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes all kinds of property, both tangible and intangible, causes of action, claims by the debtor against others, and all other forms of property. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–8 (1977); 5–541 Collier on Bankruptcy P 541.07 (16th ed.). This first element is met, as Nelson does not dispute the requirements under the Agreed Divorce Decree to pay the debts or indemnify the Debtor. Rather, Nelson disputes whether the second element, that the obligations be mature and payable on demand or order, is met.

### 2. Nelson's obligations pursuant to the Agreed Divorce Decree are matured and payable on demand or order.

 While neither party disputes Nelson's obligation to pay the Debts under the Agreed Divorce Decree, Nelson contends that his duty to indemnify Porretto has not been triggered. Specifically, Nelson argues that the "estate has not made any distributions for which the Trustee may seek indemnification." [Finding of Fact No. 13]. Nelson's position blurs his duties of indemnification and reimbursement under the Agreed Divorce Decree when, in fact, these obligations are separate.

Pursuant to the plain language of the Agreed Divorce Decree, Nelson's duty to indemnify is separate and distinct from his duty to reimburse. Namely, the language of the indemnification provision reads as follows:

[I]f any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt ... liable for

such debt ... of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt ... against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt ... and hold him or her harmless from all damages from the claim or demand.

[Doc. No. 38, Ex. No. 3, at pg. 29]. Then, in a separate provision, the duty to reimburse is discussed:

[T]he indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy a judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

[*Id.* at pg. 39–40]. Nelson's reading, which equates the two duties, would render one of these provisions meaningless. Thus, not only are the two duties separate and distinct, but the duty to indemnify is not conditioned, as is the duty to reimburse, on actual payments being made. Whereas the duty to reimburse is only applicable "for any payment made by the indemnified party[,]" the duty to indemnify is not similarly limited. [*Id.*].

■ This reading of the Agreed Divorce Decree is supported by Texas law. Where, as here, the language of the indemnity agreement is broad—containing phrases such as "will indemnify[,]" "and hold him or her harmless[,]" "from all damages from the claim or demand"—this evidences an agreement to indemnify against liability. *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex.1999). Where the agreement is to indemnify against liability, the indemnitee is entitled to recover from the indemnitor

"when the liability becomes fixed and certain, as by rendition of a judgment, whether or not the indemnitee has yet suffered actual damages, as by payment of a judgment." *Id.* (citing *Tubb v. Bartlett,* 862 S.W.2d 740, 750 (Tex.App.–El Paso 1993, writ denied)). Therefore, insofar as Nelson contends that his duty to indemnify the Debtor is not triggered until the Debtor actually makes payments, this Court disagrees. Rather, as Porretto has entered into settlement agreements with Christiansen, Anderson, and Ford, and these creditors have allowed claims in the bankruptcy case, Nelson's obligation to indemnify Porretto for the Debts is mature and payable on order. Porretto is not required to pay the claims before seeking indemnification from Nelson.

Since the two-fold requirements of § 542 are met, Nelson must turnover funds to the Trustee sufficient to satisfy the Debts.

### D. Nelson is Not Entitled to An Equitable Defense

■ Despite the fact that the requirements for turnover under § 542 are met, counsel for Nelson argues that it would be inequitable to require Nelson to turnover the amounts of the allowed Anderson, Christiansen, and Ford claims to the estate. The argument is that because the Bankruptcy Code would require that the money Nelson turned over be distributed according to the priority rules, even if Nelson turned over the full amount of these claims, Anderson, Christiansen, and Ford would likely not be paid in full and would thereafter seek payment from Nelson individually. In effect, Nelson would have to pay more than what was owed on the debts.

While counsel for Nelson makes a valid point, this argument ignores the fact that Nelson could have avoided this outcome had he complied with the Agreed Divorce

Decree. By not paying the Debts, Nelson is in contempt of a court order that he agreed to, even going so far as to agree to the substance of the agreement. Further, Nelson was represented by counsel in connection with the Agreed Divorce Decree. The unclean hands doctrine prevents a party from seeking an equitable remedy when he himself has behaved inequitably.

### E. The Proper Remedy is Turnover

Finally, counsel for Nelson argues that, if this Court finds in favor of the Trustee and against Nelson, that the proper remedy is a judgment against Nelson rather than a turnover order. + +Add Ms. Miller's case law here.+ + § 542 is entitled "Turnover of Property to the Estate."

### IV. CONCLUSION

For all of the reasons set forth herein, this Court grants the relief sought by the Trustee. An order consistent with these Findings of Fact and Conclusions of Law will be entered on the docket simultaneously with their entry.